**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| ERIC LENTZ, | ) | |
| | ) | Civil Action No. 11 - 1106 |
| Plaintiff, | ) | |
| | ) | Chief Magistrate Judge Lisa Pupo Lenihan |
| v. | ) | |
| | ) | |
| MELVIN S. LOCKETT, *et al*., | ) | ECF Nos. 84, 86, 89, 92 |
| | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM OPINION</u>**

This case is before the Court on the Motions to Dismiss filed by the following
Defendants:

1. Dr. John Doe Rueda ("Dr. Rueda") and Dr. John Doe Suvorov ("Dr. Suvorov")
   (ECF No. 84);

2. Melvin S. Lockett ("Lockett"), Michael W. Harlow ("Harlow"), Brian H.
   Thompson ("Thompson"), Michael J. Mahlmeister ("Mahlmeister"), Martin
   Aubal ("Aubal"), Kimberly Boal ("Boal"), Patrick Quimby ("Quimby"), John
   Doe Edwards ("Edwards"), Stewart Steinberg ("Steinberg"), John Doe Zetwo
   ("Zetwo"), and Dorina Varner ("Varner") (referred to herein as "the Department
   of Corrections Defendants" or "DOC Defendants") and Cory A. Bish ("Bish") and
   Bruce J. Fronk ("Fronk") (referred to herein as "the Pennsylvania Board of
   Probation and Parole Defendants" or "PBPP Defendants") (ECF No. 86);

3. Danielle Steele ("Steele") (ECF No. 89); and

4. Dr. Jeff Morgan ("Dr. Morgan"), PA Ed Hornman ("PA Hornman"), and PA
   Debra Goosenell ("PA Goosenell") (referred to herein as "the SCI-Mercer
   Medical Defendants") (ECF No. 92).

For the reasons that follow, the Motions will be granted on the grounds addressed herein.

### I.  Procedural History

Plaintiff initiated the instant action on August 30, 2011 (ECF No. 1), and his Complaint

was docketed on August 31, 2011 (ECF No. 3).  Plaintiff filed an Amended Complaint on

October 25, 2011.  (ECF No. 13.)  After the filing of Motions to Dismiss, Plaintiff filed a Second

Amended Complaint on April 3, 2012.  (ECF No. 80.)  Thereafter, Defendants filed the Motions

to Dismiss that are currently pending before the Court.  (ECF Nos. 84, 86, 89, 92.)  Plaintiff filed

responses in opposition to each Motion.  (ECF Nos. 94, 95, 97, 99.)  The Motions are now ripe

for review.

## II.  Plaintiff's Allegations

Plaintiff's Second Amended Complaint is difficult to decipher.  However, a review of

Plaintiff's numerous exhibits somewhat clarifies his allegations and claims.[1]  Plaintiff alleges

that, prior to his incarceration, he was prescribed Xanax for his psychological conditions and

Oxycodone for his chronic pain.  He claims that while he was confined at SCI-Pittsburgh and

SCI-Mercer, Defendants would not provide him with Xanax or Oxycodone and instead provided

him with what he alleges were less effective medications.  Plaintiff submitted numerous inmate

requests and grievances demanding medication that was the same or equivalent in strength to

Xanax and Oxycodone, but his requests and grievances were all denied.

Plaintiff claims that his chronic pain affected his ability to walk but that prior to his

incarceration he was able to walk with a cane while on Oxycodone.  He claims that the SCI-

Mercer Medical Defendants provided him with crutches to aid him in walking but that after

using the crutches for two years he began to experience back pain, which he contributes to this

long-term use of crutches.

---

[1] Since the initiation of this lawsuit, Plaintiff has filed numerous exhibits.  *See* Exh. 1 (ECF No. 7-2); Exh. 2 (ECF No. 7-3); Exh. 3 (ECF No. 7-4); Exh. 4 (ECF No. 7-5); Exh. 5 (ECF No. 7-6); Exh. 6 (ECF Nos. 7-7, 7-8); Exh. 8 (ECF No. 8.); Exh. 10 (ECF No. 15-2); Exh. 11 (ECF No. 17-2); Exh. 12 (ECF Nos. 22-1, 52-2); Exh. 13 (ECF No. 21-1); Exh. 14 (ECF No. 21-2); Exh. 15 (ECF No. 52-1); Exh. 16 (ECF No. 69-1); Exh. 17 (ECF No. 69-2); Exh. 18 (ECF No. 69-3); Exh. 19 (ECF No. 69-4); Exh. 20 (ECF No. 69-5); Exh. 21 (ECF No. 79); Exh. 23 (ECF Nos. 88, 91-1, 98-1); Exh. 24 (ECF Nos. 98-2, 105); and Exh. X (ECF No. 107-1).

Plaintiff was paroled and released to the custody of CEC Penn Pavilion, a privately owned and operated facility which accepts persons who have been paroled from the Department of Corrections and various county prisons; however, Plaintiff's stay at Penn Pavilion was short lived.   After approximately 18 hours, Plaintiff was involuntarily discharged and arrested for violating the conditions of his parole by failing to abide by the rules and regulations of the facility.   According to Plaintiff's exhibits, he caused a disturbance by the front desk of Penn Pavilion when he was told that he would not receive Xanax or Vicodin.   He then requested to be placed in a private room and to go to the hospital because he was sick from not receiving the requested medication.   He was sent to a holding cell, the only available private area, but was not permitted to go to the hospital.   Later that day, a Penn Pavilion internal committee decided to remove Plaintiff from the facility.   The Pennsylvania Board of Probation and Parole Defendants then visited Plaintiff while in the holding cell to effectuate his arrest.   Plaintiff requested Vicodin but was told by the PBPP Defendants that he was in violation of his parole.   He was arrested and transferred back to SCI-Mercer pending a review by the parole board.   As a consequence of not completing his enrollment at Penn Pavilion, his parole was revoked.

### III. Standard of Review

Defendants have filed Motions to Dismiss Plaintiff's Second Amended Complaint.   A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint.   Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).   A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face."   Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Ashcroft v. Iqbal, 129 S. Ct.1937, 1949 (May 18, 2009) (citing Twombly, 550 U.S.

at 555-57).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556).  The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Id. (citing Twombly, 550 U.S. at 556-57).

In Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. Aug. 18, 2009), the United States Court of Appeals for the Third Circuit discussed its decision in Phillips v. County of Allegheny, 515 F.3d 224, 232-33 (3d Cir. 2008) (construing Twombly in a civil rights context), and described how the Rule 12(b)(6) standard had changed in light of Twombly and Iqbal as follows:

> After Iqbal, it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949.  To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible.  This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1948.  The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. See Id. at 1949-50; see also Twombly, 505 U.S. at 555, & n. 3.

Fowler, 578 F.3d at 210.

Thereafter, in light of Iqbal, the United States Court of Appeals for the Third Circuit in Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009), set forth the following two-prong test to be applied by the district courts in deciding motions to dismiss for failure to state a claim:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded

facts as true, but may disregard any legal conclusions. [Iqbal, 129 S. Ct. at 1949]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." Id. at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. See Phillips, 515 F.3d at 234-35. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'- 'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Fowler, 578 F.3d at 210-11.

In addition to the complaint, courts may consider matters of public record and other matters of which a court may take judicial notice, court orders, and exhibits attached to the complaint when adjudicating a motion to dismiss under Rule 12(b)(6). Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citing 5A Wright and Miller, *Federal Practice and Procedure: Civil 2d*, § 1357; Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990)). A court may also consider indisputably authentic documents. Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir. 2004); Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993); Golden v. Cook, 293 F. Supp.2d 546, 551 (W.D. Pa. 2003) ("[C]ourts are permitted to consider matters of which they may take judicial notice, including records and reports of administrative bodies, and publically available records and transcripts from judicial proceedings 'in related or underlying cases which have a direct relation to the matters at issue.'") (citations omitted).

Finally, a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). When presented with a *pro se* complaint, the court should construe the complaint liberally and

draw fair inferences from what is not alleged as well as from what is alleged.  Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003).  In a section 1983 action, the court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name."  Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)).  *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688).  Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim.  *See*, *e.g.*, Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 2102 (10th Cir. 1996).

## IV. Discussion

Plaintiff asserts that Defendants violated his rights under the First, Eighth and Fourteenth Amendments to the United States Constitution.  He also asserts that Defendants violated Title II of the Americans with Disabilities Act and the Pennsylvania Department of Corrections Code of Ethics.  All Defendants move to dismiss Plaintiff's Second Amendment Complaint on various grounds.  The pertinent grounds which will result in the dismissal of all claims against all Defendants are addressed *infra*.

### A.  Personal Involvement

For liability under 42 U.S.C. § 1983, a defendant "must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*."  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing Parratt v. Taylor, 451 U.S. 527, 537 n.3 (1981)).  Recently, the Third Circuit Court of Appeals specified certain instances

whereby a supervisor could be liable in a section 1983 action.   In <u>Argueta v. United States Immigration & Customs Enforcement</u>, 643 F.3d 60 (3d Cir. 2011), the court stated:

> . . .  "[p]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."   <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988); <i>see also, e.g.</i>, <u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 129 (3d Cir. 2010) ("Instead, Santiago's allegations appear to invoke a theory of liability under which 'a supervisor may be personally liable . . . if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations.'") (quoting <u>A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.</u>, 372 F.3d 572, 586 (3d Cir. 2004)) (footnote omitted)).   "It is also possible to establish section 1983 supervisory liability by showing a supervisor tolerated past or ongoing misbehavior."   <u>Baker v. Monroe Township</u>, 50 F.3d 1186, 1191 n.3 (3d Cir. 1995) (citing <u>Stoneking v. Bradford Area Sch. Dist.</u>, 882 F.2d 720, 724-25 (3d Cir. 1989)).   We further indicated that a supervisor may be liable under § 1983 if he or she implements a policy or practice that creates an unreasonable risk of a constitutional violation on the part of the subordinate and the supervisor's failure to change the policy or employ corrective practices is a cause of this unconstitutional conduct.   <i>See, e.g.</i>, <u>Brown v. Muhlenberg Township</u>, 269 F.3d 205, 216 (3d Cir. 2001).

<u>Argueta</u>, 643 F.3d at 72.

Importantly for this case, inmates do not have a constitutional right to a prison grievance system.  <i>See</i> <u>Jones v. North Carolina Prisoners' Labor Union, Inc.</u>, 433 U.S. 119, 137-38 (1977); <u>Speight v. Sims</u>, 283 F. App'x 880, 881 (3d Cir. 2008) (citing <u>Massey v. Helman</u>, 259 F.3d 641, 647 (7th Cir. 2001), stating that "the existence of a prison grievance procedure confers no liberty interest on a prisoner.")   Moreover, personal knowledge of constitutional violations cannot be established solely as a result of addressing grievances.  <i>See</i> <u>Dellarciprete</u>, 845 F.2d at 1208.  In other words, the denial of a grievance or mere concurrence in an administrative appeal process is insufficient to establish personal involvement.  <i>See</i> <u>Simonton v. Tennis</u>, 437 F. App'x 60, 62 (3d Cir. 2011) ("[A] prison official's secondary review of an inmate's grievance or appeal is not sufficient to demonstrate the personal involvement required to establish the deprivation of a constitutional right.");  <u>Brooks v. Beard</u>, 167 F. App'x 923, 925 (3d Cir. 2006) (holding that a

state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct); Manns v. Bledsoe, No. 10-1564, 2011 U.S. Dist. LEXIS 102268, 2011 WL 4048781, at *4 (M.D. Pa. Sept. 12, 2011); Mincy v. DeParlos, No. 08-0507, 2011 U.S. Dist. LEXIS 31168, 2011 WL 1120295, at *7 (M.D. Pa. Mar. 24, 2011); Wilkerson v. Schafer, No. 09-2539, 2011 U.S. Dist. LEXIS 25916, 2011 WL 900994, at *7 (M.D. Pa. Mar. 14, 2011) (allegations that defendants "should be held liable for due process violations because they should have become aware of them through their review of his misconduct appeals is insufficient to establish their personal involvement in the underlying unconstitutional conduct"); Logan v. Lockett, No. 07-1759, 2009 U.S. Dist. LEXIS 24328, 2009 WL 799749, at *8 (W.D. Pa. Mar. 25, 2009); Croom v. Wagner, No. 06-1431, 2006 U.S. Dist. LEXIS 64915, 2006 WL 2619794, at *4 (E.D. Pa. Sept. 11, 2006) (holding that neither the filing of a grievance nor an appeal of a grievance is sufficient to impose knowledge of any wrongdoing); Ramos v. Pa. Dept. of Corr., No. 06-1444, 2006 U.S. Dist. LEXIS 51582, 2006 WL 2129148, at *2 (M.D. Pa. July 27, 2006) (holding that the review and denial of the grievances and subsequent administrative appeal does not establish personal involvement).

As to DOC Defendants Boal, Lockett, Harlow, Thompson, Mahlmeister, Aubal, Quimby, Edwards, Zetwo, and Varner, Plaintiff's Second Amended Complaint contains no allegations of involvement apart from their responding to grievances and other administrative requests concerning his medical treatment, for which he was under the care of physicians.  Plaintiff's exhibits support the conclusion that these Defendants had no involvement in any alleged wrongdoing.  His claims against these individuals concern their failure to intervene on his behalf after learning of his situation through the administrative grievance and appeals process.  Because

this involvement is insufficient to establish the requisite level of personal involvement for liability under Section 1983, Plaintiff's Second Amended Complaint will be dismissed as to these Defendants.

**B.  Equal Protection**

Plaintiff alleges that Defendants violated his right to equal protection by treating him differently than inmates represented by attorneys.  It appears as though Plaintiff alleges that Defendants denied him the medication he requested because he did not have an attorney.

The Equal Protection Clause provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. CONST. Amend. XIV, § 1.  To prevail on an equal protection claim, the burden rests with the plaintiff to present evidence that he has been treated differently from persons who are similarly situated.  Williams v. Morton, 343 F.3d 212, 221 (3d Cir. 2003).  Moreover, an equal protection violation requires proof that an inmate was treated differently than others similarly situated as a result of intentional or purposeful discrimination.  *See* Wilson v. Schillinger, 761 F.2d 921, 929 (3d Cir. 1985).

Apart from Plaintiff's conclusory assertion that Defendants did not provide him with Xanax and Oxycodone because he was not represented by an attorney, he has alleged no facts to support a viable equal protection claim.  Plaintiff has neither identified any particular individual who had civil representation and received these medications nor has he alleged that he was not provided with these medications as a result of intentional or purposeful discrimination.  Furthermore, any assertion of such discriminatory intent is belied by Plaintiff's own exhibits, which demonstrate that Defendants provided Plaintiff with medical treatment for his psychological and pain management needs.  As noted below in connection with Plaintiff's Eighth Amendment claim, the Constitution requires only that inmates be provided with medical care.  It

does not, however, mandate that inmates be provided with the medical treatment of their choice. As such, the Court concludes that Plaintiff has failed to state an equal protection claim upon which relief can be granted and this claim will therefore be dismissed.

### C. Deliberate Indifference to Medical Needs

For various reasons, Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs. The Eighth Amendment protects individuals against the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This protection, enforced against the states through the Fourteenth Amendment, guarantees incarcerated persons humane conditions of confinement. In this regard, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates." Famer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).

To state an Eighth Amendment violation in the context of medical treatment, an inmate must demonstrate two elements: (1) he was suffering from a "serious medical need," and (2) prison officials were deliberately indifferent to the serious medical need. Gamble v. Estelle, 439 U.S. 897 (1978). The first showing requires the court to objectively determine whether the medical need was "sufficiently serious." A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988). The second prong requires the court to subjectively determine whether the officials acted with a sufficiently culpable state of mind. Deliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, a denial

of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury.  Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993).

### 1.  Dr. Rueda and Dr. Suvorov[2]

Even assuming Plaintiff's psychological conditions qualified as serious medical needs, Plaintiff's allegations with respect to Dr. Rueda and Dr. Suvorov fall short of establishing deliberate indifference.  Rather, they echo Plaintiff's dissatisfaction and/or disagreement with the medication that he was prescribed.  Specifically, Plaintiff alleges that Dr. Rueda and Dr. Suvorov refused to prescribe him Xanax or an equivalent to Xanax.  He admits, however, that Dr. Rueda prescribed him Trazodone and that Dr. Suvorov prescribed him Triavil.  *See*, *generally*, Plaintiff's Exh. 1 and 15 (ECF Nos. 7-2; 52-1.)  Both medications are antidepressants used to treat depression and anxiety disorders.[3]  This is a classic example of an inmate's disagreement over the type of treatment provided and which does not state a claim for an Eighth Amendment violation.  *See* White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990).

The deliberate indifference standard affords considerable deference to prison doctors in the diagnosis and treatment of medical problems on inmates.  Inmates of Allegheny Cnty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979).  Courts will not second-guess the propriety or adequacy of a particular course of treatment if it is a question of sound professional judgment. Id.  Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, that would amount to medical malpractice and not an Eighth Amendment violation.  *See* White, 897 F.2d at 110; *see also* Estelle, 429 U.S. at 105-06. Because Plaintiff received medical treatment for his psychological conditions and merely

---

[2] It appears from Plaintiff's submissions that Dr. Rueda is a psychiatrist at SCI-Pittsburgh and Dr. Suvorov is a psychiatrist at SCI-Mercer.

[3]  http:// www.drugs.com/trazodone.html and http://www.drugs.com/mtm/triavil/html (last viewed on December 27, 2012)

disagrees with the doctors' choice of medication to treat his conditions, he has failed to state a claim for an Eighth Amendment violation against Dr. Rueda and Dr. Suvorov and the claim will be dismissed accordingly.

**2.  SCI-Mercer Medical Defendants Dr. Morgan, PA Hornman, and PA Goosenell**

Plaintiff's allegations with respect to Dr. Morgan, PA Hornman, and PA Goosenell also fall short of establishing an Eighth Amendment violation.  Plaintiff alleges that these Defendants were deliberately indifferent to his chronic pain by failing to provide him with Oxycodone or its equivalent so that he could walk without the use of crutches.  He further alleges that the long term use of crutches caused him even more pain.  However, in his exhibits, Plaintiff admits that he was provided with medical care by Dr. Morgan, PA Hornman, and PA Goosenell. Specifically, Plaintiff was consistently provided with pain medication, such as Vicodin, and he was also offered physical therapy for pain management but did not show up on at least two occasions.  See, generally, Plaintiff's Exh. 2, 4, 5, 6, 12, 13, 14, 18 (ECF Nos. 7-3; 7-5; 7-6; 7-7; 7-8; 21-1; 21-2; 22-1; 52-2; 69-3.)  It is clear from Plaintiff's own submissions that these medical Defendants provided Plaintiff with medical treatment and that Plaintiff simply disagrees with the preferred medication used to treat his pain.  This, however, does not state a claim for deliberate indifference.  See White, 897 F.2d at 110; Rochell v. Corr. Med. Servs., No. 4:05CV268, 2006 U.S. Dist. LEXIS 37943, at *10 (N.D. Miss. April 10, 2006) ("The constitution does not . . . guarantee pain-free medical treatment . . . .  While the plaintiff might have preferred stronger medication, his mere disagreement with his medical treatment does not state a constitutional claim.").  Moreover, Plaintiff is not constitutionally entitled to the treatment of his choice. Douglas v. Vihidal, No. 11-350, 2012, U.S. Dist. LEXIS 73908, at * 18 (W.D. Pa. May 1, 2012) (citing Layne v. Vinzant, 657 F.2d 468, 473 (1st Cir. 1981).  At most, Plaintiff's allegations

sound in negligence or medical malpractice, which is an insufficient basis upon which to establish an Eighth Amendment violation. *See* White, 897 F.2d at 110; *see also* Estelle, 429 U.S. at 105-06. Thus, Plaintiff has failed to state a claim for deliberate indifference against Dr. Morgan, PA Hornman, and PA Goosenell.

### 3. Non-medical Defendants

It has been established in the Third Circuit that Superintendents and Medical Health Care Administrators are "undisputably administrators, [and] not doctors." Thomas v. Dragovich, 142 F. App'x 33, 39 (3d Cir. 2005). However, the Third Circuit has held that a plaintiff prisoner's complaint survived a motion to dismiss where a Chief Health Care Administrator "allowed the issuance of a latex catheter despite . . . knowledge" of the prisoner's allergy to latex. Mutschler v. SCI Albion CHCA Heath Care, 445 F. App'x 617, 621 (3d Cir. 2011). Thus, for a non-medical prison official to be subject to a claim of deliberate indifference, the complaint must include sufficient factual allegations of the administrator's actual knowledge of "a substantial risk of serious harm" and of the official's disregard for that risk "by failing to take reasonable measure to abate it." Farmer, 511 U.S. at 825.

The Third Circuit has held that "[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands" and "absent a reason to believe (or actual knowledge) that the prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004). Thus, the plaintiff "bears the burden of proving (and hence pleading) facts supporting the defendants' mental states." Id. Further, the Third Circuit has held that where a prisoner wrote letters to a Superintendent and State Commissioner for

Corrections, "neither can be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." <u>Durmer</u>, 991 F.2d 64, 69 (3d Cir. 1993).

In order for non-medical personnel to be found liable for deliberate indifference, the plaintiff must show that the personnel "possessed actual knowledge or a reason to believe that 'prison doctors or their assistants [were] mistreating (or not treating)'" the prisoner. <u>Thomas</u>, 142 F. App'x at 39 (citing <u>Spruill</u>, 372 F.3d at 236). Although forwarding grievance forms to medical staff or speaking with them directly may be helpful, "a failure to undertake such actions or others like them does not constitute deliberate indifference, and may not be legally recognized as such." <u>Id</u>. (citing <u>Durmer</u>, 991 F.2d at 69). Additionally, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." <u>Rode</u>, 845 F.2d at 1207.

### a. DOC Defendants Lockett, Boal, Harlow, Thompson, Mahlmeister, Aubal, Quimby, Edwards, Zetwo, Steinberg, and Varner

Plaintiff alleges that the above named Defendants were deliberately indifferent to his medical needs because they either failed to provide him with the requested medication that he was not receiving from the doctors or failed to intervene on his behalf despite knowing that he was in pain. However, these non-medical Defendants had no hand in making medical decisions affecting Plaintiff and they are afforded wide latitude in leaving medical decisions to medical personnel. *See* <u>Thomas</u>, 142 F. App'x at 42 (Becker, J., dissenting) (prison officials are afforded "broad discretion to leave prisoners in the hands of medical personnel"). They are not charged with deliberate indifference for withholding specific treatment or failing to intervene unless they knew or should have known that medical personnel were mistreating or failing to treat Plaintiff. Moreover, reviewing Plaintiff's grievances relating to medical care alone is insufficient to

impute knowledge.  Glenn v. Barua, 252 F. App'x 493, 498 (3d Cir. 2007).  The Eighth Amendment requires no more of the grievance examiner than he "review the prisoner's complaints and verify with the medical officials that the prisoner was receiving treatment."  Id. (internal citations and quotations omitted).

It is undisputed that Plaintiff was under the care of medical professionals while he was incarcerated at SCI-Pittsburgh and SCI-Mercer.  Plaintiff has not alleged any facts that support an inference that these non-medical Defendants participated in or directed the medical decisions.  The facts, as alleged, are that these prison officials reviewed Plaintiff's medical records and consulted with treating medical personnel after Plaintiff filed grievances and other administrative requests concerning his medical care.  They confirmed that Plaintiff was receiving treatment and concluded from their consultation with medical staff that Plaintiff's treatment was appropriate.  There are simply no allegations to support any claim that they were deliberately indifferent to Plaintiff's medical needs.  They did not ignore his complaints.  They consulted with medical personnel and accepted their professional judgment.  There are no facts alleged that could give rise to an inference that they were not justified in deferring Plaintiff's medical treatment decisions to medical personnel.  Therefore, Plaintiff's Eighth Amendment claim against these non-medical Defendants will be dismissed.

### b.  Defendant Steele[4]

It is clear from Plaintiff's Second Amended Complaint that he seeks to hold Defendant Steele liable for the acts of her employees.  Plaintiff alleges only that Defendant Steele's employees denied his requests for medical attention.  However, Defendant Steele cannot be held liable for the conduct of her employees solely on a *respondeat superior* theory of liability, and

---

[4] According to Defendant Steele's brief, she is the Director of Community Education Centers Penn Pavilion, the community corrections program which Plaintiff briefly entered.  (ECF No. 90 at 4.)

there are no allegations of personal involvement with respect to Defendant Steele apart from her agreeing to accept Plaintiff into Penn Pavilion and then later signing his discharge papers.  This is insufficient to support an inference that she was deliberately indifferent to Plaintiff's medical needs.  As such, Plaintiff's Eighth Amendment claim against her will also be dismissed.

### c.  PBPP Defendants Bish and Fronk

It is unclear exactly to what extent Plaintiff seeks to hold PBPP Defendants Bish and Fronk liable.  The only allegations with respect to these two Defendants are that they asked Plaintiff why he needed Vicodin before arresting him for violating the conditions of his parole after it had already been decided that Plaintiff would be involuntarily discharged from Penn Pavilion.  It is clear from Plaintiff's submissions that there are simply no allegations which would support a basis for an Eighth Amendment claim against these two Defendants.  As such, this claim will be dismissed against them.

### D.  Americans with Disabilities Act

Plaintiff claims that all Defendants violated Title II of the Americans with Disabilities Act ("ADA"), as amended 42 U.S.C. § 12131, *et seq*.  Title II of the ADA prohibits discrimination by public entities, such as state prisons.  *See* Pennsylvania Dep't of Corrections v. Yeskey, 524 U.S. 206, 210 (1998) (Title II of the ADA applies to state prisons); United States v. Georgia, 546 U.S. 151, 154 (2006) (Title II of the ADA authorizes suits by inmates against public entities such as state prisons).  Specifically, Title II of the ADA provides, in relevant part, that "no qualified individual with a disability shall, by reason of such disability, be excluded form participation in or be denied the benefits of the services or activities of a public entity or be subjected to discrimination by such entity."  42 U.S.C. § 12132.  However, individual defendants, sued in their individual capacities, are not liable under Title II of the ADA because

they are not "public entities" within the meaning of the ADA.  Emerson v. Thiel College, 296 F.3d 184, 189 (3d Cir. 2002).   Accordingly, Plaintiff is unable to state a claim against Defendants in their individual capacities under this act.

Plaintiff states that he is suing all Defendants in their official capacities.  "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself."  Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (internal citation omitted).  The Eleventh Amendment provides states with immunity not only from suits brought by citizens of other states, but also from suits brought by their own citizens.  Hans v. Louisiana, 134 U.S. 1, 12-14 (1890).  But a state's Eleventh Amendment protection from federal suits is not absolute.  The Supreme Court has held that Title II of the ADA validly abrogates sovereign immunity as to state conduct that actually violates the Constitution, United States v. Georgia, 546 U.S. 151, 159 (2006), but in order to determine whether a plaintiff may sue a State for damages under Title II, courts must "(1) identify which aspects of the State's alleged conduct violated Title II; (2) identify to what extent such conduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, determine whether Congress' purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid."  Bowers v. NCAA, 475 F.3d 524, 553 (3d Cir. 2007).

Pursuant to this standard, Plaintiff must initially state a valid claim under Title II of the ADA, and to do this he must show that (1) he is a qualified individual (2) with a disability, and (3) he was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity, (4) by reason

of his disability.  42 U.S.C. § 12132; <u>Bowers</u>, 475 F.3d at 553 n.32; *see also* <u>Wagner v. Fair Acres Geriatric Center</u>, 49 F.3d 1002, 1009 (3d Cir. 1995).

Assuming that Plaintiff is a qualified individual with a disability under the ADA,[5] he does not allege that he was excluded from any service, program, or activity on the basis of his disability.  In actuality, this claim is premised on Plaintiff's disagreement with the medical judgment of the medical professionals charged with his care.  This, however, fails to state a claim under the ADA.  *See*, *e.g.*, <u>Iseley v. Beard</u>, 200 F. App'x 137, 142 (3d Cir. 2006); <u>Fitzgerald v. Corr. Corp. of Am.</u>, 403 F.3d 1134, 1144 (10th Cir. 2005) ("[P]urely medical decisions . . . do not ordinarily fall within the scope of the ADA or the Rehabilitation Act."); <u>Burger v. Bloomberg</u>, 418 F.3d 882 (8th Cir. 2005) (medical treatment decisions are not a basis for ADA claims); <u>Bryant v. Madigan</u>, 84 F.3d 246, 249 (7th Cir. 1996) (holding that "the [ADA] would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners . . . [t]he ADA does not create a remedy for medical malpractice."); *see also* <u>Lesley v. Chie</u>, 250 F.3d 47, 55 (1st Cir. 2001) ("[A] plaintiff's showing of medical unreasonableness must be framed within some larger theory of disability discrimination."); <u>Thomas v. Pa. Dep't of Corr.</u>, 615 F. Supp. 2d 411, 429 (W.D. Pa. 2009) (plaintiff's requests for a handicap cell that were denied based on a medical determination that they were not warranted did not support discriminatory treatment in violation of Title II of the ADA).  Therefore, the Court finds that Plaintiff has failed to state a claim against any named Defendant for a violation of Title II of the ADA.

### E.  Conspiracy/Retaliation

---

[5] The Court notes, however, that Plaintiff has submitted documentation from the Social Security Administration disapproving his claim for Supplemental Security Income payments upon concluding that he is not disabled or blind under their rules.  *See* Plaintiff's Exh. X (ECF No. 107-1 at 8.)

Plaintiff alleges that Defendants Aubal, Boal, Dr. Morgan, Quimby, Edwards, Steele and Thompson "conspired to retaliate" against him.  It is well settled that retaliation for the exercise of a constitutionally protected activity is itself a violation of rights secured by the United States Constitution, which is actionable under Section 1983.  Rauser v. Horn, 341 F.3d 330 (3d Cir. 2001); White v. Napoleon, 897 F.2d 103, 112 (3d Cir. 1990).  In order to prevail on a retaliation claim, a plaintiff must show three things: (1) that the conduct in which he engaged was constitutionally protected; (2) that he suffered "adverse action"[6] at the hands of prison officials; and (3) that his constitutionally protected conduct was a substantial motivating factor in the defendants' conduct.  Rauser, 241 F.3d at 333 (adopting Mount Healthy Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).  Once a plaintiff has made his *prima facie* case, the burden then shifts to the defendant to prove by a preponderance of the evidence that he or she "would have made the same decision absent the protected conduct for reasons reasonably related to penological interest."  Rauser, 241 F.3d at 334 (incorporating Turner v. Safley, 482 U.S. 78, 89 (1987)).

Here, Plaintiff neither states for what reason he was allegedly retaliated against or in what way these Defendants retaliated against him.  The mere allegation of retaliation is insufficient to establish such a claim.  Moreover, with the exception of Dr. Morgan, there are no allegations of personal involvement in any alleged wrong doing with respect to any of the Defendants against whom Plaintiff has alleged this claim and unsupported allegations are insufficient to establish personal involvement.  Because of this, Plaintiff fails to meet the pleading standards of Iqbal and Twombly and his retaliation claim will be dismissed accordingly.

To the extent Plaintiff is alleging a conspiracy claim pursuant to 42 U.S.C. § 1983, his claim will be dismissed for the same reasons.  To properly state a Section 1983 conspiracy claim,

---

[6] An adverse action is one "sufficient to deter a person of ordinary firmness from exercising his rights."   Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000).

a plaintiff must allege that "persons acting under color of state law conspired to deprive him of a federally protected right." Perano v. Twp. of Tilden, 423 F. App'x 234 (3d Cir. 2011). A conspiracy requires a "'meeting of the minds.'" Startzell v. City of Philadelphia, 533 F.3d 183, 205 (3d Cir. 2008) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 (1970)). In his Second Amended Complaint, Plaintiff only states in a conclusory manner that the above named Defendants "conspired to retaliate." He provides no support whatsoever for his allegations of a conspiracy. As such, Plaintiff has failed to state a conspiracy claim against these Defendants.

## F. Due Process

Plaintiff claims that Defendants violated his right to "due process of medical care" because they removed him from a course of medical care that he was on before he was incarcerated. Plaintiff, however, misunderstands his due process rights.

A Section 1983 action may be brought for a violation of procedural due process, which guarantees fair procedure for the deprivation of a constitutionally protected interest in life, liberty or property. Zinermon v. Burch, 494 U.S. 113, 125 (1990). Plaintiff has alleged neither the existence of a constitutionally protected interest nor constitutionally deficient procedures by the state in its deprivation of that interest. While Plaintiff does indeed have a constitutionally protected interest in receiving adequate medical care while in prison, he does not have a constitutionally protected interest in receiving the *same* medical treatment he was receiving prior to his incarceration. *See* White, 897 F.2d at 110 (prison medical doctors are not held to the same treatment plans of other doctors because there may "be several acceptable ways to treat an illness").

A Section 1983 action may also be brought for a violation of substantive due process, which "bars certain arbitrary, wrongful government actions 'regardless of the fairness of the

procedures used to implement them.'"   Id. (quoting Daniels v. Williams, 474 U.S. 327, 331 (1986)).  In other words, the government cannot deprive someone of a constitutionally protected interest without appropriate justification regardless of the procedures used to do the taking.  Again, however, Plaintiff has failed to allege the existence of a constitutionally protected interest for which he was deprived.

Because Plaintiff fails to state a procedural or substantive due process claim for which relief can be granted, the Court will dismiss this claim.  Moreover, to the extent Plaintiff's due process claim is based upon the same facts as alleged to support his Eighth Amendment claim, such claim is barred by the "explicit textual source" rule set forth in Albright v. Oliver, 510 U.S. 266 (1994) and Graham v. Connor, 490 U.S. 386 (1989).[7]

### G.  DOC Code of Ethics

Plaintiff claims that, for various reasons, all Defendants have violated the Pennsylvania Department of Corrections Code of Ethics.  To the extent Plaintiff seeks to recover directly because of these deviations from prison policies, he fails to state a claim upon which relief can be granted.  State agency guidelines do not, in and of themselves, create a right, and do not have the force of law.  See Mercy Catholic Med. Ctr. v. Thompson, 380 F.3d 142, 154 (3d Cir. 2004); see also Atwell v. Lavan, 557 F. Supp. 2d 532, 556 n.24 (M.D. Pa. Dec. 21, 2007) (a prison policy manual does not have the force of law and does not rise to the level of a regulation).  As such, a violation of internal policy does not automatically rise to the level of a Constitutional violation.  Whitcraft v. Township of Cherry Hill, 974 F. Supp. 392, 398 (D. N.J. 1996) (citing Daniels v. Williams, 474 U.S. 327, 332-33 (1986); Edwards v. Baer, 863 F.2d 606, 608 (8th Cir.

---

[7] In Albright, the Supreme Court quoted Graham v. Connor, 490 U.S. 386, 395 (1989), and stated that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims."  Albright, 510 U.S. at 273 (internal quotations omitted).

1988); Jones v. Chieffo, 833 F. Supp. 498, 505-06 (E.D. Pa. 1993)). *See also* Hovater v. Robinson, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) ("[A] failure to adhere to administrative regulations does not equate to a constitutional violation."); Walker v. Zenk, No. 01-1644, 2007 U.S. Dist. LEXIS 96351, at *29-30 n.19 (M.D. Pa. Nov. 15, 2007) (*adopted in part and rejected in part by* 2008 U.S. Dist. LEXIS 9086 (M.D. Pa. Feb. 7, 2008) ("[A]lleged violations of prison policies do[] not rise to the level of a Constitutional claim."); Estrella v. Hogsten, No. 06-1340, 2007 U.S. Dist. LEXIS 51208, at *21 (M.D. Pa. July 16, 2007) (holding that mere failure of prison officials to follow their own regulations alone is not a constitutional violation). Consequently, any claims by Plaintiff seeking redress solely for alleged violations of the DOC Code of Ethics will be dismissed.

### H. Eleventh Amendment Immunity

Plaintiff has sued all Defendants in their official capacity as well as their individual capacity.  "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself."  Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (internal citation omitted).  The Eleventh Amendment provides states with immunity not only from suits brought by citizens of other states, but also from suits brought by their own citizens.  Hans v. Louisiana, 134 U.S. 1, 12-14 (1890).  But a state's Eleventh Amendment protection from federal suits is not absolute.  Congress may authorize such a suit under its power to enforce the Fourteenth Amendment, Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670 (1999), thereby abrogating a state's sovereign immunity but only "when it both unequivocally intends to do so and 'acts pursuant to a valid grant of constitutional authority'" Bd. of Trs. Of the Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2001) (quoting Kimel v. Bd. of

Regents, 528 U.S. 62, 73 (2000).  A state may also waive its sovereign immunity by consenting to suit.  Coll. Sav. Bank, 527 U.S. at 670 (citing Clark v. Barnard, 108 U.S. 436 (1883)); Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238 (1985).  Additionally, a person seeking purely prospective relief against state officials for ongoing violations of federal law may sue under the "legal fiction" of Ex parte Young, 209 U.S. 123, 159-60 (1908), despite the text of the Eleventh Amendment.  Alden v. Maine, 527 U.S. 706, 757 (1999).

No exceptions to the Eleventh Amendment immunity are applicable here.  By statute, the Commonwealth of Pennsylvania has specifically withheld its consent to be sued.  *See* 42 Pa. Cons. Stat. Ann. § 8521(b); *see also* Laskaris v. Thornburgh, 661 F.2d 23, 25 (3d Cir. 1981). Additionally, Congress has not expressly abrogated Pennsylvania's Eleventh Amendment immunity from civil rights suits for damages.  *See, e.g.*, Will, 491 U.S. at 66 ("Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties."); Quern v. Jordan, 440 U.S. 332, 341 (1979); Boykin v. Bloomsburg Univ. of Pa., 893 F. Supp. 378 (M.D. Pa. 1995) (holding that States' immunity has not been abrogated for actions brought under §§ 1981, 1983, 1985, and 1986), *aff'd*, 91 F.3d 122 (3d Cir. 1996).  Finally, Plaintiff's claims for injunctive and/or declaratory relief have been rendered moot because he is no longer incarcerated.  *See*, *e.g.*, Bronson v. Overton, No. 08-52E, 2010 U.S. Dist. LEXIS 60003, 2010 WL 2512345, at *1 n.1 (E.D. Pa. May 27, 2010); Fortes v. Harding, 19 F. Supp. 2d 323, 326 (M.D. Pa. 1998) ("Fortes' transfer to another institution moots any claim for injunctive and declaratory relief").[8]  As such, all Defendants are entitled to Eleventh Amendment immunity to the extent Plaintiff has sued them in their official capacities.

_____

[8] Additionally, declaratory relief cases address present/future harms, not past harm.  "To satisfy the standing and 'case and controversy' requirements of Article III, a party seeking a declaratory judgment 'must allege facts from

### I.  Exhaustion of Administrative Remedies

Defendants Dr. Rueda, Dr. Suvorov, Dr. Morgan, PA Hornman, and PA Goosenell move to dismiss Plaintiff's Second Amended Complaint on the basis that Plaintiff has failed to exhaust his administrative remedies prior to filing this lawsuit.   Being that all claims against these Defendants will be dismissed on other grounds, that Plaintiff has submitted evidence suggesting that he did in fact exhaust his administrative remedies at least with respect to Dr. Rueda and Dr. Morgan, and that prisoner plaintiffs are not required to plead or demonstrate exhaustion in their complaints, the Court will decline to address Defendants' motion on this ground.   *See* Jones v. Bock, 549 U.S. 199, 216 (2007); Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).

### J.  State Law Claims

Although the Court has not identified any state law claim which Plaintiff attempts to assert in his Second Amended Complaint, several Defendants have moved to dismiss any such claim that may be inferred.   Federal courts have jurisdiction over state claims which are related to the federal claims and result from a common nucleus of operative facts.   *See* United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966); *see also* Aldinger v. Howard, 427 U.S. 1, 9 (1976). Supplemental jurisdiction may be declined, however, when the court has dismissed all claims over which it has original jurisdiction.   *See* 28 U.S.C. § 1367(c)(3).   In light of this Court's determination that Defendants' Motions to Dismiss will be granted and that Plaintiff's federal claims will be dismissed with prejudice as to each Defendant, the Court declines to exercise jurisdiction over Plaintiff's any state law claim Plaintiff attempts to assert.

### K.  Amendment of Complaint

---

which it appears there is a substantial likelihood that he will suffer injury in the future.'"   Martin v. Keitel, 205 F. App'x 925, 928 (3d Cir. 2006) (affirming dismissal of declaratory judgment action seeking "a declaration that defendants violated . . . rights in the past" as no longer justiciable).

The Court must allow amendment by plaintiffs in civil rights cases brought under § 1983 before dismissing pursuant to Rule 12(b)(6), irrespective of whether it is requested, unless doing so would be "inequitable or futile." Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); *see also* Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) (asserting that where a complaint is vulnerable to dismissal pursuant to 12(b)(6), the district court must offer the opportunity to amend unless it would be inequitable or futile). The Court is cognizant of these holdings, but finds that allowing for amendment by Plaintiff would be futile. In addition, Plaintiff has amended his complaint twice; the Second Amended Complaint being filed after some of the Motions to Dismiss had been filed. A careful review of the record commands that Plaintiff, even garnering all the liberalities that accompany his *pro se* status, fails to state any claims under § 1983 for which relief may be granted. It is clear that all of Plaintiff's claims stem from his disagreement with his medical treatment while he was incarcerated. As detailed *supra*, Plaintiff was provided with medical care and given medications for his conditions. While Plaintiff may have preferred stronger medication, Plaintiff's submissions belie any suggestion that Defendants were deliberately indifferent to his medical needs or violated any of his rights of which he alleges in his Second Amended Complaint. Consequently, any attempt to amend on Plaintiff's part would clearly be futile.

## V.  Conclusion

For the foregoing reasons, Defendants Motions to Dismiss will be granted on the grounds addressed herein and Plaintiff's Second Amended Complaint will be dismissed with prejudice against all named Defendants. Any further attempt to amend would be futile. An appropriate Order will follow.

Dated: December 27, 2012.

_____
Lisa Pupo Lenihan
Chief United States Magistrate Judge

cc:  **Eric Lentz**
     Just for Jesus Homeless Outreach
     14530 Route 28
     Brockway, PA  15824
     *Via U.S. Postal Mail*

     Counsel of Record
     *Via ECF Electronic Mail*